# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kenneth J. Johnson, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 4:08-776-PMD |
| v. ) | |
| ) | |
| J. Al Cannon, Jr; Mitch P. Lucas; ) | **ORDER** |
| Captain Gathers; and Captain Beatty, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court on Plaintiff Kenneth J. Johnson, Jr.'s ("Plaintiff") objections to the Report and Recommendation ("R&R") of a United States Magistrate Judge. Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and *in forma pauperis* under 28 U.S.C. § 1915, seeking injunctive relief and monetary damages for alleged violations of his equal protection and due process rights, as well as for being subjected to conditions of confinement that amounted to punishment, while he was incarcerated at the Charleston County Detention Center ("CCDC"). Defendants filed a motion for summary judgement, and the Magistrate Judge recommended that Defendants' motion for summary judgement be granted. Having reviewed the entire record, including Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and incorporates it into this Order.

## **BACKGROUND**

On November 9, 2006, Plaintiff, a federal prisoner, was arrested on a probation violation for violating the terms of his supervised release. Plaintiff was held at the CCDC for the U.S. Marshal Service until he could be transferred to a federal penitentiary. Plaintiff has filed a § 1983 complaint and amended complaint which alleges discrimination and various constitutional violations based on

the conditions of his confinement at CCDC. Since the filing of the complaint Plaintiff has been transferred to a federal prison in Arizona.

In claim one, Plaintiff alleges that CCDC has policies which discriminated between inmates housed in older units compared with inmates housed in newer units. Plaintiff alleges that inmates in the new units have four to seven days in which to schedule visitation, whereas inmates housed in the older units have only two days in which to do the same. Plaintiff further alleges that inmates housed in the newer units have their own recreational yard, while the inmates in Plaintiff's older facility, where inmates from North Side Units B, C, D, and E reside, must all share a single recreational yard. Also, the newer units have eight to thirteen phones to be used by 70 to 100 inmates, whereas the North Side units C and D only have two phones to be used by 40 to 50 inmates. Plaintiff finally alleges that inmates housed in the newer units have greater access to barber clippers than inmates housed in the older units, and that the older unit's disciplinary board is racially bias "when it comes to passing down Disciplinary Sanctions."

In his second claim, Plaintiff alleges that he was exposed to "unsafe and unhealthy living conditions" while at CCDC because the unit in which he was housed had approximately 45 to 50 inmates in it, but the unit was only designed to accommodate 24. Plaintiff alleges that the showers were unusable, which led to unsanitary conditions and that there are only two phones for the 45 to 50 inmates in these units which leads to arguments, fights, and a generally hostile living environment. Plaintiff alleges that the heating and air units were inadequately cleaned, which lead to the build up of mold, mildew, dust, and other allergens in the unit. Plaintiff alleges that the units themselves are not properly cleaned and that he was housed with inmates infected with staph infection and HIV. Plaintiff also claims that fights between inmates frequently occurred, yet the

blood was not properly cleaned by the jail staff. Finally, Plaintiff alleges that these units are "besieged with roaches, spiders, and ants . . . ."

In his third claim, Plaintiff alleges a denial of due process because CCDC did not have the legal case law he needed to aid him in his federal case. In his amended complaint, Plaintiff alleges that on March 28, 2008, Plaintiff received "express legal mail" that was already opened and that an entire section of the "important research material" was missing. In his fourth claim, Plaintiff alleges that CCDC employees subjected him to cruel and unusual punishment because, while being booked into the CCDC, he was forced to sleep on the floor, without a mattress or blanket, and denied the opportunity to shower or brush his teeth. Plaintiff also alleges that North Side units D and C are subjected to numerous lock-down periods, during which inmates are given only bag lunches, denied access to the commissary in order to purchase personal hygiene and writing items, and denied cleaning supplies. Plaintiff alleges that on December 10, 2006, he was denied a roll of toilet paper by Officer Washington while the unit was on lock-down. Plaintiff alleges that he left his cell to retrieve the toilet paper, and as a result, he was sentenced by the disciplinary board to twenty days in disciplinary segregation.

In his fifth claim, Plaintiff alleges that conditions of the CCDC, along with the actions of the officers employed at the CCDC, have caused him a considerable amount of stress that has led to a nervous condition, which has caused psychological, emotional, and behavioral problems. In his sixth claim, asserted in his amended complaint, Plaintiff essentially reiterates his first claim, by alleging CCDC discriminated against him by unnecessarily offering better living conditions to inmates housed in the newer housing units. Lastly, in his seventh claim, which is asserted in his amended complaint, Plaintiff alleges that he was denied medical attention by the CCDC. More specifically,

Plaintiff alleges that on January 9, 2008 his right hand was injured in a fight, yet his requests for medical treatment were denied. Plaintiff alleges that he continued to request medical treatment, but was not placed on the x-ray list until early March, 2008. As of March 31, 2008, Plaintiff alleges that he is still in pain and has not received the proper medical attention.

Defendants have filed a motion for summary judgment as to all of Plaintiff's claims, and the Magistrate Judge recommends the court grant Defendants' motion. In making this recommendation, the Magistrate Judge found Plaintiff's claims for injunctive relief to be moot, as Plaintiff is no longer incarcerated at the CCDC. He also found that Plaintiff failed to exhaust his administrative remedies for all of his claims, except those allegations relating to the conditions of his confinement and the opening of his legal mail outside of his presence. As to these two claims, the Magistrate Judge determined that Defendants are entitled to judgment as a matter of law, and Plaintiff's objections to this recommendation are now before the court.

## STANDARD OF REVIEW

### I. The Magistrate Judge's Report and Recommendation

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R. *Id.*

4

## II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)).

Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327. The court remains mindful that Plaintiff appears before the court *pro se*, and therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

**ANALYSIS OF PLAINTIFF'S OBJECTIONS**

At the outset, the court notes that Plaintiff does not object to the Magistrate Judge's findings that Plaintiff's request for injunctive relief is moot, since he is no longer housed at CCDC, and that summary judgment should be granted to Defendant Sheriff Al Cannon as to Plaintiff's claim for supervisor liability. Therefore, the court is not required to give any explanation for adopting these recommendations. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

**I.    Plaintiff's Failure to Exhaust His Administrative Remedies**

Plaintiff does specifically object to the Magistrate Judge's recommendation that all of his claims, except for those pertaining to his conditions of confinement and the opening of his legal mail outside of his presence, should be dismissed because he failed to exhaust all of his administrative remedies as to those claims. In his objections, Plaintiff argues that the Magistrate Judge overlooked his original complaint and accompanying questionnaire, in which he stated that many grievances were ignored and never answered. (Objections at 1.) Plaintiff further argues that Defendants Beatty, Gathers, and Lucas filed affidavits in which they lied about the fact that Plaintiff had not filed any grievances other than the grievances concerning the opening of legal mail. (*Id.* at 1–2.) He asks the court to strike the affidavits from the record and to address the all of the allegations of his complaints on their merits. (*Id.* at 2.)

The Prison Litigation Reform Act of 1995 mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit to contest the conditions of their confinement. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a). Thus, there is no question that unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 212 (2007) (citation omitted). The Supreme Court has held that "to properly exhaust administrative

remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (internal quotation omitted). Accordingly, Plaintiff must exhaust his claims through the SCDC grievance process prior to bringing those claims in this court.

After a review of the record, it appears Plaintiff has provided the court with two inmate grievance forms, and Defendants admit to one other grievance being filed. First, Plaintiff filed a grievance on December 12, 2006, in which he complained of inhumane treatment by an Officer Washington, who is not a named Defendant to this suit. The grievance appears to have stemmed from an incident on December 10, 2006, where Plaintiff was sanctioned with twenty days of disciplinary segregation for leaving his cell without permission and taking toilet paper while his unit was on lock-down. The SCDC response was "I am trying to understand the problem. I cannot make out what happen[ed] in order to look into the situation." (Compl.) Plaintiff has offered no evidence that he took any additional action with respect to this grievance. Plaintiff also provided a grievance form, dated February 14, 2008, in which he complained that SCDC was subjecting prisoners to cruel and unusual punishment placing units on lock down, restricting recreational privileges, and using bag lunches "as punishment." In his grievance, Plaintiff also complained about being refused the use of cleaning supplies, writing materials, and personal hygiene products, as well as not receiving "already ordered canteen postage." (*Id.*) SCDC responded by instructing Plaintiff to address his grievance to the Major over this issue as bag lunches are being issued as a safety measure not a punishment. Plaintiff claims he then addressed his grievance to the major, but never received a response.

7

Although the court has not been provided a copy of it, Defendants appear to concede that Plaintiff filed a third and fourth inmate grievance on March 29, 2008, and again on April 1, 2008, regarding the opening of his legal mail outside of his presence. (Def.'s Mot. for Summ. J. at 9.) Defendants contend that this claim was resolved "when it was determined that prison staff followed proper procedure by opening the mail, which did not contain the name of a law firm on the outside of the envelope, outside of the Plaintiff's presence." (Def.'s Mot. for Summ. J. at 9.)

From this record, it appears the Magistrate Judge correctly concluded that Plaintiff only exhausted his conditions of confinement claim and his claim that the Defendants improperly opened his legal mail. The court addresses these claims below. While Plaintiff claims in his objections that he filed many grievances, which were never answered, and also accuses the Defendants of lying in their affidavits about the fact that he has not filed grievances for his other claims, he has not provided any evidence or grievance forms to indicate otherwise. Therefore, the court finds that Plaintiff failed to exhaust his remaining claims and only addresses those claim for which he filed a grievance.

## II.     **Conditions of Confinement**

After analyzing Plaintiff's claim that Defendants subjected him to cruel and unusual punishment by placing his unit on lock down, taking away his recreational privileges, using bag lunches "as punishment," and refusing him the use of cleaning supplies, writing materials, and personal hygiene products, as well as not supplying him "already ordered canteen postage," the Magistrate Judge recommended granting Defendants' motion for summary judgment. The Magistrate Judge found that Plaintiff did not present evidence to create a genuine issue of material fact as to whether the Defendants deprived him of a basic need and that such a deprivation were

attended by deliberate indifference." (R&R at 7.) He further found that Plaintiff failed to present evidence to create a genuine issue of material fact as to whether he was denied the minimal civilized measure of life's necessities or that any Defendant engaged in conduct with the purpose or knowledge that the harm would result. (*Id.*) To reach these findings, the Magistrate Judge analyzed Plaintiff's conditions of confinement claim pursuant to the Eighth Amendment, and in his objections, Plaintiff argues that the Magistrate Judge erred by not analyzing his claim pursuant to the Fourteenth Amendment, since he was a pretrial detainee at the time he was subjected to the allegedly unconstitutional conditions.

It is unclear as to whether or not the Magistrate Judge was correct in treating Plaintiff, a probation violator, as a convicted prisoner and analyzing his claims under the Eighth Amendment. It appears the Fourth Circuit has not answered this issue, although it has stated the following about the matter when addressing a claim for deliberate indifference to a serious medical need:

> Preliminarily, for the purpose of determining the constitutional predicate for appellant's claims, we admit to some uncertainty about whether Brown was a pretrial detainee or a convicted prisoner. The question is whether Brown, who was being held on a probation violation, could be 'punished' under the Eighth Amendment. The Supreme Court has stated that 'the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.' *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Although the state had already 'secured a formal adjudication of guilt' for the crime underlying Brown's probation, it had not yet secured 'a formal adjudication' that Brown had violated his probation and should be returned to state custody. And, if Brown was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of medical care to detainees who require it.' *Hill*, 979 F.2d at 991 (emphasis added). In any case, we need not resolve whether Brown was a pretrial detainee or a convicted prisoner because the standard in either case is the same—that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.' *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. W. Va. 1990).

*Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).

In this case, Plaintiff had already been convicted of a federal offense underlying his probation, and he was being held at CCDC for the United States Marshall Service only until it could transfer him to a federal penitentiary. Like the Fourth Circuit in *Brown*, the court does not believe it needs to decide the issue in order to resolve this matter. If the court treats Plaintiff as a convicted prisoner, it agrees with the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment, which was made pursuant to an Eighth Amendment analysis. And if the court treats Plaintiff as a pretrial detainee, it still finds Defendants are entitled to a judgment as a matter of law. With respect to conditions of confinement claims made pursuant to the Fourteenth Amendment, the Fourth Circuit has stated:

> While a convicted prisoner is entitled to protection only against "cruel and unusual" punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description. However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense. In order to establish that a particular condition or restriction of detention constitutes constitutionally impermissible 'punishment' a detainee must show either 1) an 'expressed intent' to punish or 2) a lack of a reasonable relationship 'to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.

*Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (internal quotations and citations omitted). In his objections, Plaintiff does not allege that the Defendants expressly intended to punish him. Instead, he argues that the conditions at the CCDC were unreasonably related to the institutions interests in maintaining order and safety, and therefore the conditions constitute punishment. (Objections at 2–3.) He further asserts that his sworn affidavit clearly shows Defendants deprived him of food and exercise as a means of punishment, and they effectively punished him by displaying a deliberate indifference to the fact that he was housed in the older North Side Unit. (*Id.*)

If there is no express intent to punish, the court's inquiry turns on whether "an alternative purpose to which the [Defendants'] acts may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 250 (4th Cir. 2005). Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Plaintiff has failed to present a genuine issue of material fact as to whether he was denied a minimal amount of a basic need, or that Defendants' alleged conduct caused him to suffer harm. Nothing in the record supports Plaintiff's allegations that CCDC officials used bag lunches, restricted recreational time, and housed Plaintiff in the older housing unit as punishment; rather, it appears that all inmates housed at CCDC during the relevant time were subjected to the same conditions for the purpose of maintaining institutional order and safety. Therefore, Plaintiff's claims fail as a matter of law.

### III. <u>Opening of Legal Mail</u>

As to Plaintiff's claim that the Defendants opened his legal mail outside of his presence and removed important research material from its contents, the Magistrate Judge recommended the court grant Defendants' motion for summary judgment because Plaintiff failed to allege or show that any mail which might have been opened was marked as legal mail. (R&R at 8) (citing *United States v. Stotts*, 925 F.2d 83, 89–90 (4th Cir. 1991) (finding that no constitutional violation arises if mail which is not properly marked—that the legal sender is specifically identified and the mail is marked confidential— is opened outside the inmate's presence). Plaintiff does not object to this finding; therefore, the court adopts it. Rather than object to this recommendation, Plaintiff reiterates his claim that the CCDC's lack of a law library hindered his efforts to pursue his legal claims. (Objections at

11

3.) The court grants Defendants' motion for summary judgment as to this allegation as well, as inmates whose confinement is of a very temporary nature or for purposes of transfer to other institutions do not have a constitutional right to a law library. *Jones v. Lexington County Det. Ctr.*, 586 F. Supp. 2d 444, 448 (D.S.C. 2008) (citing *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987)).

## CONCLUSION

Based on the foregoing, the court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims related to the conditions of his confinement at CCDC and to the improper opening of his legal mail. The court also **DISMISSES** without prejudice the remainder of Plaintiff's claims for failure to exhaust his administrative remedies.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 15, 2010**
**Charleston,** SC